State v. Wood

STATE OF NORTH CAROLINA v. JOHN WOOD

No. 289A83

(Filed 6 March 1984)

**Criminal Law § 89.2— exclusion of testimony concerning alibi witnesses—no prejudicial error**

In a prosecution for first-degree rape, kidnapping and armed robbery, the trial court's exclusion of testimony relating to the circumstances under which defendant's alibi witnesses refused to retract their statement which supported defendant's alibi was not prejudicial error where extensive evidence of similar import was before the jury.

APPEAL by defendant from *Helms, Judge,* at the 28 March 1983 Criminal Session of RICHMOND County Superior Court.

Defendant was charged in indictments, proper in form, with first-degree rape, kidnapping and armed robbery (second offense). Defendant was originally tried for these offenses before Judge William H. Helms and a jury during the 30 March 1981 Criminal Session of Richmond County Superior Court. The jury found defendant guilty of each of the crimes charged. On appeal to this Court, defendant was granted a new trial on the basis of the erroneous admission of hearsay testimony of a prosecuting witness. *State v. Wood,* 306 N.C. 510, 294 S.E. 2d 310 (1982).

On retrial, defendant was again convicted of first-degree rape, kidnapping and armed robbery (second offense). He was sentenced to life imprisonment for each offense and appeals directly to this Court as a matter of right pursuant to G.S. 7A-27(a).

The evidence presented during the retrial of this case did not materially differ from the evidence presented at defendant's first trial on these charges. The material underlying facts of this case are therefore fully discussed in the opinion reported at 306 N.C. 510, 294 S.E. 2d 310 and we will not repeat them here. Those facts necessary to an understanding of the issue presented on appeal will be set forth in our discussion of the assignment of error brought forward by defendant.

*Rufus L. Edmisten, Attorney General, by John R. B. Matthis, Special Deputy Attorney General, and Alan S. Hirsch, Assistant Attorney General, for the State.*

*Adam Stein, Appellate Defender, by Ann B. Petersen, Assistant Appellate Defender, for defendant appellant.*

BRANCH, Chief Justice.

The sole question presented for review in this case concerns the trial court's exclusion of testimony relating to the circumstances under which defendant's alibi witnesses refused to retract their statements supportive of defendant's alibi.

The victim, Mrs. Vera Stevens, identified defendant as the perpetrator of the offenses committed against her on 2 January 1981 between 5:30 a.m. and 6:45 a.m. Defendant denied committing the offenses and testified that he was with his aunt, Kay Williams, and her boyfriend, Leon Jiles, at the time Mrs. Stevens was assaulted.

Ms. Williams and Sergeant Jiles each testified that defendant was with them at the time the crimes were allegedly committed. Their testimony reveals that a few days after defendant's arrest, Lieutenant Terry Moore of the Hamlet Police Department came to Ms. Williams' house to question her and Jiles about defendant's activities on the morning of 2 January. After speaking with the officer, both Ms. Williams and Sergeant Jiles went to the police department and gave written statements indicating that defendant rode with them to Aberdeen early that morning. Ms. Williams and Sergeant Jiles estimated that they left her house in Hamlet around 6:00 a.m. Jiles testified that it is approximately 20 miles from Hamlet to Aberdeen and that they dropped defendant off at Martin's Grill in Aberdeen at about 6:30 a.m. In response to questioning by Lieutenant Moore at the police station, Williams and Jiles each affirmed the truthfulness of their statements.

On two subsequent occasions, Lieutenant Moore traveled to Fort Bragg and spoke to Sergeant Jiles and to Jiles' commanding officer. On both occasions, Sergeant Jiles reiterated that his statement was truthful and that he would not change it.

The trial court permitted both Ms. Williams and Sergeant Jiles to testify as to these earlier corroborative statements to

Lieutenant Moore. In a further attempt to show the circumstances under which they reaffirmed the accuracy and truthfulness of their original statements, defendant sought to elicit testimony from Williams and Jiles as to the comments made by Lieutenant Moore during his conversations with them. The State's objections to this testimony were sustained on the basis that such evidence constituted inadmissible hearsay.

The *voir dire* transcript reveals that both Ms. Williams and Sergeant Jiles would have testified that they continued to affirm their alibi for defendant in the face of personal threats from Lieutenant Moore. Ms. Williams testified on *voir dire* that Lieutenant Moore accused her of lying and threatened to arrest her and put her in jail if she did not change her statement. Sergeant Jiles testified that Lieutenant Moore kept saying his statement could not be true. When Moore later came to Fort Bragg, he said to Sergeant Jiles, in the presence of a superior officer, that his statement was untrue and he would be given a last chance to change it. Moore further threatened Jiles that if he did not tell the truth, "it would mess up [his] military career."

Defendant argues that the trial judge erred in ruling that this evidence of threats by Lieutenant Moore was inadmissible hearsay. To support his contention, defendant cites the Court to Brandis on North Carolina Evidence § 141 (2d rev. ed. 1982) and cases cited therein for the proposition that "[i]f a statement is offered for any purpose other than that of proving the truth of the matter stated, it is not objectionable as hearsay." It is defendant's position that the statements of Lieutenant Moore were not offered to prove the truth of any matter stated by him, but were instead offered to show that the alibi witnesses consistently refused to change their statements despite threats of prison and ruination of Jiles' military career. Because of the close relationship between defendant and his alibi witnesses, defendant maintains that it was "competent and essential to the strength of the defense to offer [this] evidence corroborating the alibi witnesses."

Assuming, *arguendo*, that the trial judge erred by excluding this testimony illustrating the circumstances under which the alibi witnesses refused to retract or modify their statements, we perceive no prejudice to defendant. We reach this conclusion because our review of the transcript reveals that the jury was in

fact made aware of Moore's repeated attempts to convince these defense witnesses to change their stories and of threats to imprison Ms. Williams and to jeopardize Sergeant Jiles' military career.

Prior to objection by the district attorney, Ms. Williams testified as follows on direct examination: "I told him that I was not lying, and he threatened that if I didn't change my statement, that he was going to put me in jail, and I told him—."

Similarly, Jiles' testimony clearly reveals that he felt he was being intimidated, but that he refused to abandon his story nonetheless. The following excerpts from his testimony plainly show the Lieutenant's persistence:

Q. O.K. As a result of anything he [Lieutenant Moore] said to you, what did you next say to him?

A. I told him I wasn't going to change it.

Q. Told him what?

A. I told him, I told the Lieutenant I wasn't going to change the statement.

.  .  .

Q. As a result of anything else that he said after you told him you weren't going to change the statement, what did you next say to him?

A. I told the Lieutenant the statement was true, and that was it.

Q. All right. Did you talk with Lt. Moore any after that date?

A. Yes, sir, I did.

Q. When was that?

A. Later on, I would say approximately a month later, the Lieutenant and another officer came down to Fort Bragg and went to the Order Room where my commanding officer works, and my First Sergeant, and talked to them, and—

.  .  .

Q. What did you say in response to anything that Lt. Moore said to your First Sergeant?

A. I told Lt. Moore and the First Sergeant that I wasn't going to change my statement, that statement was true, and I wasn't going to change it.

Q. Did Lt. Moore say anything after that?

A. Yes, he did.

. . .

Q. What did you say as a result of anything that Lt. Moore said at that time?

A. I told Lt. Moore making that statement would not affect my Military career.

Q. Did he say anything else?

A. Yes, he did.

. . .

Q. As a result of anything else that he said, what did you say?

A. I told Lt. Moore that everything on the statement is true, and I was going to let it stay exactly like that.

Q. Did you talk with Lt. Moore any after that day?

A. Yes, sir.

Q. When was that and where?

A. Lt. Moore and another officer came back to Fort Bragg and approached my Commander again and the First Sergeant. At the time I was working and I got a telephone call telling me somebody was in the Order room where my Commander works, and he wanted to see me.

Q. Did you go to the Order room?

A. Yes, I did.

Q. Who was there when you got there?

A. Again Lt. Moore.

Q. Did Lt. Moore say anything to you?

A. Yes, he did.

State v. Wood

Q. What did he say?

OBJECTION. SUSTAINED. EXCEPTION NO. 40.

Q. What did you say to him in response to whatever he said to you?

A. I told Lt. Moore he might as well stop bothering me in trying to get me to change my statement. Again I told him my statement is true, and again he brought up how it would affect —

OBJECTION. SUSTAINED. EXCEPTION NO. 41.

Q. What did you say to him as a result of anything he said to you, Sgt. Jiles?

A. Well, I told Lt. Moore the statement will still stay the same, and I wasn't going to change it and I was told —

OBJECTION. SUSTAINED. EXCEPTION NO. 42.

Q. You can tell what you said, you can't tell what someone said to you. Just tell what you said during the course of that conversation?

A. I told Lt. Moore and my First Sergeant that at that time that I had over 20 years in the Military and I didn't fear any repercussion because of writing a statement, and I was telling the truth.

We hold that any error committed by the trial court in excluding testimony concerning Lieutenant Moore's statements to the alibi witnesses was harmless in light of the above cited evidence which was before the jury.

In defendant's trial and convictions, we find no error.

No error.